UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

JASMIN BUDHAN,

                                  Plaintiff,

            -v-

BRIGHTWORKS SUSTAINABILITY LLC *and*
JOSHUA HATCH,

                                  Defendants.

------------------------------------------------------------

24 Civ. 5104

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Jasmin Budhan here sues her former employer, Brightworks Sustainability LLC ("Brightworks"), and former supervisor, Joshua Hatch (collectively, "defendants") for race discrimination and hostile work environment. She brings these claims pursuant to two federal statutes—Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), and under 42 U.S.C. § 1981 ("Section 1981")—as well as the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8-107 *et seq.* ("NYCHRL"). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

    For the reasons that follow, the Court grants the motion to dismiss Budhan's federal claims and declines to exercise supplemental jurisdiction over Budhan's claims under state and local law.

1

## I.   Background[1]

Budhan is a 28-year-old Black woman who resides in Queens County, New York. Compl. ¶ 2. Between August 2022 and June 2023, she was employed as a "materials analyst" at Brightworks, an environmental consulting company. *Id.* ¶ 3. Hatch, a founding partner and 25% owner of Brightworks, hired Budhan. *Id.* ¶¶ 40–41. The Complaint states that Budhan was qualified for the job based on her master's degree in sustainability, which she received in May 2022. *Id.* ¶¶ 17, 53.

Budhan was, according to the Complaint, "one of the only Black employees at Brightworks during her employment period." *Id.* ¶ 26. She was an "excellent" employee who consistently met billable hours targets, was routinely placed in front of key Brightworks and client stakeholders, and assigned work for significant Brightworks clients. *Id.* ¶ 22. According to the Complaint, Budhan was often praised by clients for her work product and did not receive any negative performance evaluations. *Id.* Despite her strong performance, Budhan claims that defendants: (1) "failed to credit Budhan for her work"; (2) "deprived Budhan of opportunities that non-Black materials analysts were afforded"; (3) "failed to encourage or allow Budhan to take ownership of work that she created or took the lead on"; (4) did not give Budhan "the opportunity to meaningfully participate in the relevant client meetings," an "opportunity that other non-Black employees were given"; (5) credited "non-Black analysts who received worse performance reviews" with Budhan's work; and (6) did not give Budhan "the opportunity to present her work or the speaking opportunities that similarly situated, non-Black employees were afforded." *Id.* ¶¶ 23–26 (cleaned up).

---

[1] The following undisputed facts, assumed true for purposes of resolving the motion, *see Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024), are drawn from the Complaint, Dkt. 1 ("Compl.").

In April 2023, Budhan took a 10-day vacation to Saudi Arabia. *Id.* ¶ 27. Budhan states that she received pre-approval from her supervisors to work remotely during the trip. *Id.* ¶ 28. On April 25, 2023, upon arriving in Saudi Arabia, the Complaint alleges, she "received an email abruptly instructing her to pause work on all projects until further notice." *Id.* ¶¶ 28–29. During a conference call with Brightworks management that day, Budhan was "accused of not informing her supervisors of her travel plans." *Id.* ¶ 29.

One month later, on June 28, 2023, Hatch terminated Budhan on a video call. *Id.* ¶ 43. Hatch "did not provide any meaningful explanation for why [Budhan] was terminated," telling her only that she was being terminated because the company was "not doing well." *Id.* ¶ 36. The Complaint alleges that, less than a year after the termination, Brightworks opened a new office and engaged in "aggressive" hiring practices. *Id.* ¶ 37.

Separately, Budhan claims she was harassed by Brightworks principals and employees on LinkedIn.com, a professional networking website. *Id.* ¶¶ 30–33. Her basis for this claim is that her LinkedIn profile received "an irregular number of views" during and after her employment with Brightworks. *Id.* ¶ 31. Her Complaint further alleges that, "upon information and belief," Brightworks employees "creat[ed] at least one suspicious empty profile and us[ed] that—or those—profiles to repeatedly monitor [Budhan]'s personal profile." *Id.* ¶ 32. This "harassing behavior" caused Budhan "extreme anxiety and made her feel threatened by her employer." *Id.* ¶ 33.

On July 3, 2024, Budhan filed the Complaint. Dkt. 1. On October 18, 2024, defendants filed a motion to dismiss. Dkt. 15 ("Def. Mem."). That day, the Court issued an order directing Budhan to either amend the Complaint or oppose the motion. Dkt. 17. On November 8, 2024,

3

Budhan opposed. Dkt. 19 ("Pl. Opp."). On November 22, 2024, defendants replied. Dkt. 25 ("Def. Reply"). On December 16, 2024, the Court held argument. Dkt. 22.

## II.    Discussion

Budhan sues Brightworks for race discrimination and hostile work environment under Title VII, Section 1981, the NYSHRL, and the NYCHRL. It brings the same claims against Hatch under the NYSHRL and NYCHRL.[2]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See St. John's Univ.*, 91 F.4th at 651. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (cleaned up). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

---

[2] Under the NYSHRL and NYCHRL, unlike under Title VII, individuals "with ownership interest or supervisors, who themselves have the authority to hire and fire employees," may be liable as employers. *See Spires v. MetLife Grp., Inc.*, No. 18 Civ. 4464, 2019 WL 4464393, at *6 (S.D.N.Y. Sept. 18, 2019) (cleaned up). It is undisputed that Hatch qualifies as such.

4

### A. Applicable Legal Principles Governing Budhan's Federal Claims

#### 1. Title VII

##### a. Race discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of," *inter alia*, "such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). A discrimination claim under Title VII is governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016). Under this framework, a plaintiff must first make out a *prima facie* case, by showing that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she was subjected to an adverse employment action, and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiff's membership in the protected class. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). On such a showing, "a temporary 'presumption' of discriminatory motivation" arises. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). The burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct. *See Littlejohn*, 795 F.3d at 307. The plaintiff must then demonstrate that the reasons offered by the defendant are mere pretext for discrimination. *See id.* at 307–08.

To defeat a motion to dismiss, however, a plaintiff is not required to make this full showing. *See Vega*, 801 F.3d at 84. Instead, at this stage, a plaintiff shoulders a "relaxed" burden under *McDonnell Douglas*, such that a complaint need only plead these "reduced requirements":

5

> (1) that [plaintiff] is a member of a protected class; (2) that [plaintiff] was qualified for employment in the position; (3) that [plaintiff] suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation.

*Littlejohn*, 795 F.3d at 307, 311 (citing *McDonnell Douglas*, 411 U.S. at 802). In short, the complaint must plead facts providing "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 311. A plaintiff may meet this minimal burden by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.

### b.  *Hostile work environment*

A plaintiff may also prevail under Title VII by establishing a claim of a hostile work environment based on her race. As the Second Circuit has explained, Title VII's prohibition of discriminatory "terms, conditions, or privileges of employment" was intended to "strike at the entire spectrum of disparate treatment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174–75 (2d Cir. 2012) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). To establish a hostile work environment claim, a Title VII plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris*, 510 U.S. at 20).

The hostile work environment test has objective and subjective elements. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22). "In determining whether a plaintiff suffered a hostile work environment, [the Court] must consider

6

the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Farmer v. Shake Shack Enterps., LLC*, 473 F. Supp. 3d 309, 334–35 (S.D.N.Y. 2020) (quoting *Littlejohn*, 795 F.3d at 321). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

### 2. Section 1981

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). It "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

Salient here, Section 1981 discrimination claims are "analyzed under the same substantive standard applicable to Title VII discrimination claims." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (citing *White v. Eastman Kodak Co.*, 368 F. App'x. 200, 201 & n.1 (2d Cir. 2010)); *see also Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011) ("Employment discrimination claims brought under section 1981 are generally analyzed under the same evidentiary framework that applies to Title VII . . . claims."); *De La Pena v. Met. Life Ins. Co.*, 953 F. Supp. 2d 393, 409 (E.D.N.Y. 2013) ("In analyzing disparate treatment claims under Section 1981, the Court applies the same standards that are used to evaluate a Title VII discrimination claim."). Similarly, Section 1981 has been

7

construed to be coextensive with Title VII in "provid[ing] a cause of action for race-based employment discrimination based on a hostile work environment." *Littlejohn*, 795 F.3d at 320 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)).

## B.   Application

### 1.   Racial Discrimination

Budhan alleges that defendants unlawfully terminated her based on her race in violation of Title VII and § 1981. Defendants do not challenge the adequacy of the pleadings as to the first three *McDonnell Douglas* factors. As pled, Budhan is a member of a protected class, she was qualified for her position, and her termination was an adverse employment action. *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (termination is a quintessential adverse employment action).[3] The parties dispute, however, whether the Complaint adequately pleads the fourth factor: that Budhan was terminated because of her race.

---

[3] Budhan claims that she separately suffered an adverse employment action when defendants "routinely deprived her of client-facing presentation opportunities." Pl. Mem. at 7. But "allegations of unfair work assignments, without more, do not amount to adverse employment actions." *See Henry*, 18 F. Supp. at 406–07 (S.D.N.Y. 2014) (citation omitted) (collecting cases); *Vega*, 801 F.3d at 85 ("An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." (citation omitted)).

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), on which Budhan relies in arguing that she "need not show that the adverse action effected a 'significant' or 'material' harm, just that she was treated worse with respect to an employment term or condition based on a protected characteristic," Pl. Mem. at 7, is inapposite. *Muldrow*, by its terms, was limited to "Title VII claims challenging transfer decisions" by "transferees," *see id.* at 355–58, a situation not at issue here. In any event, *Muldrow* noted that a plaintiff must "show *some* harm" from the adverse employment action. *Id.* at 350 (emphasis added). Budhan has not done so with respect to her work assignments. Nothing in the Complaint supports that she experienced more than non-actionable "minor annoyances" or "trivial" inconvenience from having less-than-ideal work assignments. *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 586–87 (S.D.N.Y. 2012) (citing *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011)). Indeed, the facts pled belie that Budhan was denied meaningful client-facing opportunities. *See* Compl. ¶¶ 22, 25–26 (Budhan was "routinely placed" in front of clients, assigned "material work for significant Brightworks clients," and was regularly "praise[d]" by clients).

8

The "*sine qua non*" of a discrimination claim under Title VII (and by extension, § 1981) is that "the discrimination must be because of [a protected characteristic]." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 408 (S.D.N.Y. 2012) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007)); *see also Littlejohn*, 795 F.3d at 312. Budhan's Complaint, however, lacks even "minimal evidence" from which racial discrimination may be inferred. *Id.* at 307. It makes only the following generalizations: that defendants "failed to credit Budhan for her work," "deprived Budhan of opportunities that other—non-Black—materials analysts were afforded," "failed to encourage or allow Budhan to take ownership of work that she created or took the lead on," did not give Budhan "the opportunity to meaningfully participate in relevant client meetings—an opportunity that other non-Black employees were given," "credited other Materials Analysts" with Budhan's work, and did not give Budhan "the opportunity to present her work or the speaking opportunities that similarly situated, non-Black employees were afforded." Compl. ¶¶ 24–26, 55 (cleaned up).

A plaintiff may support an inference of race discrimination in the manner Budhan assays here: by showing that similarly situated employees of a different race were treated more favorably than she. However, to make such a showing, the plaintiff "must compare herself to employees who are similarly situated in all material respects." *Henry*, 18 F. Supp. 3d at 408 (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). Here, although the Complaint alleges in generic and conclusory terms that Budhan was treated differently from "non-Black materials analysts" and other "non-Black employees," it does not offer any specifics and does not identify any ostensible comparator. It does not plead facts supporting the general claim of a difference of treatment between Budhan and others, let alone supply details minimally supporting that the difference in treatment accorded Budhan and her putative comparators was

9

due to their different races. *See id.* at 408 (dismissing such claims where complaint "failed to describe who the comparators are, what their responsibilities were, how their workplace conduct compared to plaintiff's, or how they were treated" (cleaned up)); *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 255 (2d Cir. 2014) (complaint must, to show substantial similarity, allege "the jobs compared entail common duties or content, and do not simply overlap in titles or classifications").

Here, the facts pled, if anything, undercut the conclusory claim of discrimination based on race. Although the Complaint states that Budhan was treated differently from other "non-Black materials analysts," it elsewhere pleads that she was in the first year of her career and had obtained the required job credentials only three months before starting at Brightworks. Compl. ¶¶ 17, 20. Thus, even if the conclusory claim of a difference in treatment had been well-pled, the Complaint supplies an obvious benign (and unrefuted) inference explaining it: that Budhan had less experience than other materials analysts. Also in tension with the claim that she received diminished opportunities due to discrimination are pled facts that Budhan was assigned "client-focused work for some of Brightworks' most important clients," was "routinely" placed before Brightworks stakeholders, and received positive performance evaluations. *Id.* ¶¶ 22, 26.

The Complaint's generalized allegation that "non-Black employees" were given superior professional opportunities to Budhan, *id.* ¶¶ 24, 26, also cannot sustain her race-discrimination claim. That allegation is conclusory. *See Farmer*, 473 F. Supp. at 328 ("Where non-conclusory allegations that tie the adverse action to racial animus are lacking, the claim fails."). And it breaches the requirement that, to plead a plausible claim based on a comparison to a co-worker, a complaint must allege that the comparator occupied a "substantially equivalent" position as the plaintiff. *See Garcia v. Barclays Cap., Inc.*, 281 F. Supp. 3d 365, 387 (S.D.N.Y. 2017). The

10

Complaint, however, is vague as to the roles and experience levels of the purported comparators, leaving open that these persons had materially more seniority and experience. *See id.* ("[S]elf-evident" that higher-level employees "do[] not hold substantially the same position" as subordinates); *see also, e.g., Port Auth. of N.Y. & N.J.*, 768 F.3d at 255 (similar); *Alvarado v. United Hospice*, Inc., 631 F. Supp. 3d 89, 116 (S.D.N.Y. 2022) (same). The facts pled about Budhan's putative comparators thus do not support even a "minimal" inference that Brightworks treated Budhan differently on account of her race. *Littlejohn*, 795 F.3d at 307.

The circumstances pled surrounding Budhan's termination also do not lend themselves, without more, to an inference of racial discrimination. The Complaint does not plead any facts connecting Budhan's termination to her race. There is no suggestion, for example, that any supervisor (or even employee) referred to Budhan's race in connection with her termination—or at any other time during her employment. *Compare Lettieri v. Anti-Defamation League Found.*, No. 22 Civ. 9889, 2023 WL 5152447, at *9 (S.D.N.Y. Aug. 10, 2023) (no inference of discrimination where "at no point d[id] the AC allege that [defendant] referenced [plaintiff's] or anyone else's race, let alone that [defendant] did so in a manner suggestive of an intent to discriminate on that basis."), *with Littlejohn*, 795 F.3d at 312 ("The employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious comments about others in the employee's protected group," gave rise to "an inference of discrimination" (cleaned up)). Nor does the Complaint plead any other facts tying the termination to Budhan's race. It instead conclusorily states that, "[u]pon information and belief, plaintiff was treated in this manner because of her race." Compl. ¶ 26. But a plaintiff's subjective belief that her termination was racially motivated is "legally irrelevant." *Farmer*, 473 F. Supp. 3d at 328; *see also Alvarado*, 631 F. Supp. 3d at 120 ("It is well established that a plaintiff's feelings and perceptions of being

11

discriminated against are not evidence of discrimination." (cleaned up)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) ("[A]llegations pled on information and belief are proper if accompanied by a statement of the facts upon which the belief is founded." (citation omitted)).

The facts alleged about the termination, as pled, are unconnected to race. According to the Complaint, Budhan was terminated after she had left the country on a 10-day vacation, several months into her employment. Brightworks faulted her for not having informed her supervisors of her travel plans, and a month later, terminated her. To be sure, Budhan disputes that she failed to give Brightworks notice of her travel and terms this accusation unfair. *See* Compl. ¶ 27. But even treating Budhan's account as to notice as correct, quotidian disputes and disagreements between an employer and an employee leading to adverse employment actions often arise for reasons unconnected to an employee's protected characteristic. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (dismissing complaint where plaintiff did not allege that the adverse employment action was "caused by a discriminatory motive" as opposed to plaintiff's "other actions"); *Lettieri*, 2023 WL 5152447, at *9 (similar). The onus is on the plaintiff to plead facts connecting the adverse action to such a characteristic. The Complaint does not do so here. *See, e.g., Farmer*, 473 F. Supp. 3d at 328 ("Even construing these allegations in the light most favorable to [plaintiff], they do not give rise to a plausible claim of termination on account of race."); *Henry*, 18 F. Supp. 3d at 409 (same); *Humphries v. City Univ. of N.Y.*, No. 13 Civ. 2641, 2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) (same).

The Complaint separately takes issue with a statement it alleges was made to Budhan at the time of her termination—that the company was "not doing well." Compl. ¶ 36. This, it contends, was false, in that Brightworks "open[ed] a new office and engag[ed] in aggressive

hiring practices less than one year following Plaintiff's termination[.]" *Id.* ¶ 37. But, to the extent that Budhan argues that this statement was a false cover—a pretext—for racial discrimination, this theory is ill-pled, for three reasons. First, Brightworks's expansion of a different office location, and its undertaking enhanced hiring, is consistent with its act a year earlier of downsizing the separate office in which Budhan was employed. Second, even assuming that Brightworks' explanation to Budhan were untrue, that allegation would not, other than by speculation, support the inference that its true motivation concerned Budhan's race. *See Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 579 (S.D.N.Y. 2012) ("[Plaintiff] has not shown that defendants' proffered rationale for termination is pretext for unlawful discrimination, or that her [protected characteristic] contributed to defendants' decision."), *aff'd*, *Moccio v. Cornell Univ.*, 526 F. App'x 124 (2d Cir. 2013); *cf. Livingston v. City of New York*, 563 F. Supp. 3d 201, 249 (S.D.N.Y. 2021). Third, as pled, Budhan's termination occurred within one year of her hiring, and the same decisionmaker, Hatch, was responsible for her hiring and firing. *See* Compl. ¶ 41 (Hatch "sign[ed] [Budhan's] offer letter" and "personally welcomed [her] to the Brightworks New York office"; *id.* ¶ 43 (Hatch "personally terminated [Budhan's] employment via a video conference"). In these circumstances, as the Second Circuit has recognized, "it is difficult to impute to [the decision-maker] an invidious motivation that would be inconsistent with the decision to hire," *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000), undermining the inference that race was a basis for Budhan's termination, *see, e.g., Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) ("[Plaintiff] was hired and fired by the same supervisor, creating an inference against discriminatory intent"); *Downey v. Adloox, Inc.*, 789 F. App'x 903, 907 (2d Cir. 2019) (so too finding); *Farmer*, 473 F. Supp. 3d at 329 (same).

13

In sum, the Complaint lacks concrete factual allegations supporting that Budhan was terminated on account of her race. Without supporting facts, a "generic allegation of disparate treatment . . . is simply not sufficient to nudge her claims across the line from conceivable to plausible." *Henry*, 18 F. Supp. 3d at 408 (cleaned up); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023) (same); *Farmer*, 473 F. Supp. 3d at 329 (same); *Toussaint v. City of New York*, No. 19 Civ. 1239, 2020 WL 3978317, at *6 (S.D.N.Y. June 29, 2020) (same); *Whittle v. County of Sullivan*, No. 16 Civ. 725, 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017) (same). The Court thus grants the motion to dismiss the race discrimination claims under Title VII and § 1981.

### 2. Hostile Work Environment

The Complaint alleges that defendants created a hostile work environment based on Budhan's race in violation of Title VII and § 1981. Defendants do not dispute that the AC adequately alleges that Budhan subjectively found her work environment hostile. The AC alleges that, "as a result of Defendants' actions, Plaintiff fe[lt] humiliated, degraded, victimized, embarrassed, traumatized, and emotionally distressed." Compl. ¶ 46. Defendants, however, dispute that the conduct alleged was objectively sufficiently "severe or pervasive" as to support a well-pled hostile work environment claim, or that the Complaint ties to race the hostile work environment that Budhan claims to have perceived. *See* Def. Mem. at 7–9; *Littlejohn*, 795 F.3d at 321. On both points, defendants are correct.

Budhan's hostile work environment claim is based on the allegations that defendants: (1) "harassed Plaintiff for taking her preapproved family trip" to Saudi Arabia; (2) inundated Budhan's LinkedIn profile with "excessive" page views, including from "at least one fake profile created by a Brightworks principal"; (3) "routinely failed to credit Plaintiff for her work";

14

(4) "deprived her of opportunities that other—non-Black—materials analysts were afforded"; (5) "failed to encourage or allow Plaintiff to take ownership of work that she created or took the lead on"; and (6) were "aware of such conduct and did not act." Compl. ¶ 55.

Measured against the case law, the facts pled fall well short of describing workplace hostility so "severe or pervasive as to have altered the conditions of [her] employment." *Littlejohn*, 795 F.3d at 321; *see Fleming v. MaxMara USA, Inc.*, 371 F. App'x. 115, 119 (2d Cir. 2010) (no hostile work environment where "defendants wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945 (2d Cir. 2008) ("[D]erogatory language," from supervisor, "dismissive comments" from management, and "intense scrutiny" of plaintiff together "insufficiently severe and pervasive" to create hostile work environment); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 8 Civ. 7586, 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (same, where plaintiff alleged "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks), *aff'd*, *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, 488 F. App'x. 530 (2d Cir. 2012); *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 562 (S.D.N.Y. 2022) ("[M]alicious[]" statements and "baseless" investigation into plaintiff's conduct did not rise to level of hostile work environment); *Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 781–82 (S.D.N.Y. 2019) (rejecting hostile work environment claim based on comments that were "tasteless, meanspirited, and sound of ignorance and bias"); *Gibson v. Wyeth Pharms., Inc.*, No. 7 Civ. 946, 2011 WL 830671, at *11 (S.D.N.Y. Mar. 9, 2011) (allegations of racial comments, three-day suspension, and forced overtime insufficient to

15

establish hostile work environment). Budhan does not identify case law upholding hostile work environment claims on facts comparable to those she pleads.

Separately, the Complaint does not tie the allegedly hostile work environment to race. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 263 (2d Cir. 2023) (hostile work environment claim must be tied to protected characteristic); *Raniola v. Bratton*, 243 F.3d 610, 618 (2d Cir. 2001). For the reasons discussed above, the Complaint does not non-conclusorily allege that any of defendants' alleged antagonistic conduct towards Budhan concerned, referenced, or was animated by her being Black. *See Maron*, 605 F. Supp. 3d at 563 (dismissing hostile work environment claim where "[p]laintiff has not plausibly alleged that [an] email 'disparaged' her in any way, let alone based on her race"); *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 552 (S.D.N.Y. 2014) ("[P]laintiff's race-based hostile work environment claims are not plausibly pleaded because plaintiff offers little if any reason to believe defendants' actions had anything to do with her race."); *Hill v. Rayboy–Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) ("When a person only makes general allegations that African-Americans are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim."). Accordingly, the Court grants defendants' motion to dismiss the hostile work environment claims under Title VII and § 1981.

## C. Supplemental Jurisdiction

Budhan's remaining claims arise under state (NYSHRL) and city (NYCHRL) law. Because the dismissed federal claims supplied the only basis for subject matter jurisdiction,[4] the

---

[4] The Complaint does not invoke diversity jurisdiction as a basis for subject matter jurisdiction. *See* Compl. ¶¶ 8–9. And the facts pled are inadequate to support such jurisdiction. It does not allege damages in excess of $75,000. *See* 28 U.S.C. § 1332(a). As to diversity of the parties, *see id.* § 1332(a)(1), it pleads that Budhan is domiciled in New York, Compl. ¶ 2, but it does not plead, as would be required for complete diversity, the citizenship of each member of limited

16

Court must determine whether to exercise supplemental jurisdiction over the surviving claims. *See* 28 U.S.C. § 1367.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise[.]" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Salient here, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

In deciding whether to exercise supplemental jurisdiction, a court balances the "values of judicial economy, convenience, fairness, and comity[.]" *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Supreme Court and the Second Circuit have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Although the exercise of supplemental jurisdiction is discretionary, the balance of factors ordinarily "will point toward declining jurisdiction over the remaining state-law claims." *Id.* at 61 (citation omitted).

---

liability company Brightworks, *id.* ¶ 4, which, for purposes of § 1332(a), takes on the citizenships of each of its members. *See Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). The Complaint does not mention any Brightworks members other than Hatch, who appears to be domiciled in Oregon. Compl. ¶ 41. That Brightworks "conducts business from its office in New York," *id.* ¶ 5, suggests the possibility that one or more members is a citizen of New York.

Here, although the Court has the discretion to exercise supplemental jurisdiction over the surviving claims, compelling reasons decisively disfavor doing so. First, the case is at an early stage. There has not been any discovery taken. And the Court's familiarity with the case is based solely on the Complaint and the briefing on the instant motions. There are negligible, if any, efficiencies to be gained by the Court's exercise of jurisdiction. Second, the Court's decision dismissing the federal laws, although instructive, does not dictate an outcome as to the state- and local-law claims. The standards for liability under Title VII and § 1981 differ from those under the NYSHRL and the NYCHRL. The NYCHRL sets a materially less demanding standard than Title VII for liability on claims of race discrimination, requiring a plaintiff only to show that she was treated "less well than other employees" based on a protected class. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023) (citation omitted); *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245 (2nd Dep't 2021) (collecting cases).

As for the NYSHRL, although the legal standard for evaluating hostile work environment claims under it was historically keyed to that of Title VII, *see Alfano*, 294 F.3d at 374 (alleged harassment must be "severe or pervasive"), a 2019 amendment to the NYSHRL put in place a more lenient standard of liability for hostile work environment claims. *See* N.Y. Exec. Law § 296(1)(h); *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 2512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022) (2019 amendment removes "severe and pervasive" requirement for NYSHRL claims). The amended NYSHRL is to be construed "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68

18

(S.D.N.Y. 2020) (quoting N.Y. Exec. Law. § 300). The case law "has yet to definitely resolve," however, whether the hostile work environment standard set by the NYSHRL as amended maps that of that NYCHRL or whether the two differ—and if so, how. *Wheeler*, 694 F. Supp. 3d at 451; *compare Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendment merely brings NYSHRL "closer to" NYCHRL standard)). To the extent that determining the viability of Budhan's surviving claims may require close attention to the requirements of state and city law, it is sensible for a state court, with its presumed familiarity with state and city law, to make that assessment.

The Court thus declines to exercise supplemental jurisdiction over the surviving NYSHRL and NYSHRL claims. *See, e.g., Johnson v. St. Barnabas Nursing Home*, 568 F. Supp. 2d 399, 401 (S.D.N.Y. 2008) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissal of predicate Title VII claim), *aff'd, Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246 (2d Cir. 2010); *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 327 (S.D.N.Y. 2024)) (same); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 400 (S.D.N.Y. 2019) (same); *Brodt v. City of New York*, 4 F. Supp. 3d 562, 573 (S.D.N.Y. 2014) (same); *Garcia v. Marc Tetro, Inc.*, No. 18 Civ. 10391, 2020 WL 996481, at *4 (S.D.N.Y. Mar. 2, 2020) (same).

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss in its entirety. The dismissal of the Complaint's federal claims, under Title VII and § 1981, is with prejudice.[5] The dismissal of the Complaint's claims under state and city law, based on a decision not to exercise supplemental jurisdiction, is without prejudice to Budhan's right to pursue these claims in a new lawsuit. The Clerk of Court is respectfully directed to close the motion pending at Docket 14 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 26, 2025
New York, New York

---

[5] Budhan has already amended her complaint once and, per the Court's amend-or-oppose order, *see* Dkt. 17, she has foregone any further opportunity to do so. *See Zappia v. Myovant Scis. Ltd.*, No. 24-253-CV, 2025 WL 338351, at *4 (2d Cir. Jan. 30, 2025) (affirming dismissal with prejudice where plaintiff "ha[d] already amended his complaint once"); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (same).